UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
––––––––––––––––––––––––––––––––––––––––––
CARMEN RIVERA, as Natural Guardian      :
o/b/o S.M.H., an Infant,                :
                            Plaintiff,  :
                                        :
            - against -                 :
                                        :
CAROLYN COLVIN,                         :
Acting Commissioner of Social Security, :
                                        :
                            Defendant.  :
––––––––––––––––––––––––––––––––––––––––––
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-14-14

REPORT AND
RECOMMENDATION

11 Civ. 4889 (CM) (RLE)

TO THE HONORABLE COLLEEN MCMAHON:

## I. INTRODUCTION

Plaintiff Carmen Rivera ("Rivera"), on behalf of her daughter S.M.H., seeks federal judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner"), pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g). On January 11, 2012, Rivera filed a motion for judgment on the pleadings. (Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Pl. Mem.").) The Commissioner asked the Court to deny Rivera's motion, and to remand the case for further administrative proceedings. (Def.'s Mem. of Law in Supp. of the Comm'r's Mot. for Remand and in Opp'n to Pl.'s Mot. for J. on the Pleadings ("Def.'s Mem.").) For the reasons set forth below, I recommend that Rivera's motion be **GRANTED**, that Defendant's motion be **DENIED**, and that the case be remanded solely for the purpose of calculating benefits.

## II. BACKGROUND

### A. Procedural History

On November 30, 2007, Rivera filed an application for Supplemental Security Income ("SSI") on behalf of S.M.H. with the Social Security Administration (the "SSA"). (Admin.

Record ("A.R.") at 71-77.) The application was denied on February 28, 2008. (A.R. at 46-49.) On February 5, 2009, a hearing was held before Administrative Law Judge Robin Artz (the "ALJ" or "Artz"), at which Rivera and S.M.H. appeared without counsel. (*Id.* at 9, 21-40.) The ALJ issued an unfavorable decision on February 24, 2009. (*Id.* at 6-20.)

Proceeding *pro se*, Rivera requested review by the Appeals Council on March 18, 2009. (*Id.* at 5.) On July 10, 2009, she secured counsel. (*Id.*) The Appeals Council denied Rivera's request for review on June 6, 2011, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3.) On July 15, 2011, Rivera filed the present Complaint. (Doc. No. 1.) The Commissioner answered on November 30, 2011. (Doc. No. 11.) On January 11, 2012, Rivera moved for judgment on the pleadings. (Doc. No. 14.). The Commissioner moved to remand on February 17, 2012 (Doc. No. 16), and Rivera filed a Reply. (Doc. No. 19.)

## B. ALJ Hearing and Decision

### 1. Testimony by Rivera and S.M.H. at the Hearing

On February 5, 2009, a hearing was held before the ALJ, at which Rivera and S.M.H. were the only two witnesses. (A.R. at 21-40.) Rivera testified that her daughter was born on May 28, 1994. (*Id.* at 23.) At the time of the hearing, S.M.H. was fourteen years old and in the seventh grade, having been held back twice in the fifth grade. (*Id.* at 24, 32.) She was reading at a second or third grade level. (*Id.* at 13.) Rivera testified that S.M.H. struggled in school and that a social worker from the Association to Benefit Children ("ABC") conducted weekly home visits to help S.M.H. with her studies. (*Id.* at 27.) S.M.H. was also attending weekly "intense therapy" sessions with Wendy Krause[1] to address her "anger problems at home, following the rules." (*Id.* at 36.)

---

[1] Krause's name is incorrectly spelled Cross in the Transcript of the Hearing.

Rivera and S.M.H. testified that S.M.H. regularly cuts school, and has been suspended for cutting. (A.R. at 32, 33, 35.) Rivera theorized that S.M.H. "acts up" because "she doesn't understand the work which makes it complicated for her because she feels embarrassed and she gets up and leaves the classroom." (*Id.* at 32-33.) Rivera had been asking for help from the school "for over three years." (*Id.* at 33.) Rivera testified that S.M.H. received an Individualized Education Program ("IEP") in December 2006 and that her daughter had a "learning disability." (*Id.* at 38.) Despite the IEP, Rivera said that the school "just . . . ignored it." (*Id.* at 39.)

S.M.H. testified that when she is not in school, she likes to "watch TV," "talk on the phone," and "hang out outside." (*Id.* at 37.) She said she only "hang[s] out" with one person, her friend Nicole. (A.R. at 37.) When asked by the ALJ if she has other friends that she sometimes sees, S.M.H. replied, "sometimes but not really." (*Id.*)

2. **Evidence of S.M.H.'s Disability**

S.M.H. was born at Metropolitan Hospital in 1994. (*Id.* at 180.) Her speech development lagged and she received speech therapy through Early Intervention services. (*Id.*) Beginning in first grade, S.M.H. had "difficulties learning the alphabet," and with reading and math. (*Id.* at 174.) She attended summer school every year following the third grade. (*Id.*) In February 2005, after S.M.H. repeated fifth grade for the third time, she started to receive counseling and preventive services at ABC "to address her academic failure." (A.R. at 138.) In a January 14, 2008 letter, ABC case worker Jessica Levy wrote that S.M.H. "has consistently demonstrated difficulty in concentrating and completing assignments." (*Id.*) Levy worked with Rivera to request an evaluation by the New York Department of Education Committee on Special Education, which conducted an IEP. (*Id.* at 138, 174.)

### a. 2006 IEP

Between October 20 and December 7, 2006, when S.M.H. was twelve years old, an IEP team observed S.M.H. and summarized its recommendations. (*Id.* at 163-84.) School psychologist Juan Capó administered several standardized tests, including the Wechsler Intelligence Scale for Children, Fourth Edition ("WISC-IV") and the Wechsler Individualized Achievement Test, Second Edition ("WIAT-II"), and authored a Psychoeducational Report. (*See id.* at 173-77.) On the WISC-IV, S.M.H.'s full scale score was seventy-eight, indicating her abilities were "borderline with higher potential." (*Id.* at 173.) Her verbal comprehension and working memory scores were both "borderline." (*Id.*) On the WIAT-II, she scored mostly "low average" or "below average" scores, with a sixty-seven in both numerical operations and reading comprehension, indicating "far below average" results. (A.R. at 176.) Dr. Capó summarized: "[S.M.H.] had significant discrepancies between cognitive domains that are indicative of a language based disorder." (*Id.* at 177.) In her IEP, S.M.H. was classified as learning disabled. (*Id.* at 163.) Recommended services were "general education with special education teacher support services five periods weekly for comprehension and math." (*Id.*) Dr. Capó described S.M.H. as "friendly, cooperative, and motivated to do well in a novel setting." (*Id.* at 167, 175.)

### b. S.M.H.'s School Behavior

On December 7, 2007, S.M.H.'s Sixth Grade Dean, Ms. Carmona, wrote a letter to memorialize S.M.H.'s "inappropriate behaviors" toward her classmates and teachers. (*Id.* at 157.) Carmona wrote that S.M.H. "has generally displayed oppositional and immature behavior in school." (A.R. at 157.) She recounted "aggressive behaviors," such as "throwing food in the lunchroom, slapping another student, and playing around at inappropriate times." (*Id.*) Carmona wrote that S.M.H. "constantly argues" with her teachers "when she does not get her way," called

one teacher "a bitch," and threw a penny at another teacher. (*Id.*) She said S.M.H. was receiving "at-risk counseling 1-2 times a week." (*Id.*)

On January 21, 2008, S.M.H.'s teacher, Ms. Aviles, filled out a Parent Conference Form in which she requested a conference with Rivera. (*Id.* at 154.) Aviles wrote that the reason for the conference was that "[S.M.H.] was cutting class today. Agent Stitchell reported she cuts constantly. The cutters log shows persistent cutting." (*Id.*) As punishment, S.M.H. was suspended for five days. (A.R. at 154.)

### c. Carol Wiener, SSA Consultative Psychologist

On January 24, 2008, SSA consultative psychologist Carol Wiener conducted a Child Intelligence Evaluation. (*Id.* at 140-43.) Dr. Wiener administered several standardized tests, including the Wide Range Achievement Test, Third Edition ("WRAT-III") and the WISC-IV. (*Id.* at 141-43.) S.M.H.'s working memory score was 56, her processing speed was 70, and her full scale IQ score was seventy. (*Id.* at 142.) Dr. Wiener reported that S.M.H. "showed considerable weakness in Working Memory and Processing Speed. Considerable scatter suggests an attention deficit." (*Id.*)

With respect to S.M.H.'s demeanor, Dr. Wiener observed S.M.H. to be "cooperative and friendly." (*Id.* at 141.) She also wrote that S.M.H. "refuses to help with any household chores" and "she is disrespectful, she fights, and she steals from her family. She reportedly has one friend. Family relationships are difficult." (A.R. at 142.) In her Medical Source Statement, Dr. Wiener wrote that S.M.H. "can maintain appropriate social behavior, although it seems she does not" and "[s]he is having difficulty interacting adequately with peers and adults." She diagnosed attention deficit hyperactivity disorder ("ADHD") and recommended psychiatric intervention and family therapy. (*Id.* at 143.)

5

d.  **Union Settlement Association**

On April 2, 2008, S.M.H. began receiving outpatient health services at Union Settlement Association / Johnson Counseling Center. (*See id.* at 185.) She attended weekly counseling sessions with clinical social worker Wendy Kraus and was evaluated by child psychiatrist Calvin Michael and psychologist Howard Hughson. (*Id.* at 185-87, 156.)

On May 21, 2008, Dr. Michael completed a Psychiatric/Mental Status Evaluation of S.M.H. (*Id.* at 158-61.) He described S.M.H.'s attention, concentration, insight, and judgment as "poor to very poor," and her impulse control as "extremely poor." (*Id.* at 159-61.) He diagnosed mood disorder not otherwise specified ("NOS"), disruptive behavior disorder NOS, and ADHD, combined. (A.R. at 161, 156, 185.) On January 6, 2010, Dr. Michael wrote that S.M.H. was experiencing problems with "attentiveness, mood swings, and extremely low frustration tolerance." (*Id.* at 191.)

Dr. Hughson administered a psychiatric interview, an IQ test, and a personality test on May 14, 2008, and November 12, 2008. (*See id.* at 186-87.) S.M.H. achieved a sixty-seven full scale score on the WISC-IV, placing her in the first percentile. (*Id.*) In his March 5, 2009 psychological report, Dr. Hughson wrote that S.M.H. had "cognitive limitations," poor "concentration, focus, and speed," and "remarkably poor" impulse control. (*Id.* at 187.) He wrote she had "no respect for authority" and was "very reactive to perceived aggression." (*Id.*)

On June 1, 2009, Wendy Kraus and Dr. Michael wrote a joint letter in which they stated that S.M.H. "struggles with behavioral and emotional issues including mood swings, impulsivity, aggressive and oppositional behaviors at home and at school, and poor judgment." (A.R. at 185.) They wrote that she had been prescribed medication "to support her overall functioning." (*Id.*)

6

### e.   2008 and 2009 IEPs

On January 7, 2008, when S.M.H. was thirteen and a half years old, a second IEP was conducted. (*Id.* at 206-16.) S.M.H. continued to be classified as learning disabled. (*Id.* at 206.) Recommended services were "general education with special education teacher support services 4 periods a week of direct service and 1 period of indirect services. Services can be in a separate location or in the classroom as determined by need." (*Id.*) S.M.H. read, wrote, and performed math at a fifth grade level. (*Id.* at 206, 208.) The IEP stated that S.M.H. had difficulty "staying focused when she [was] in Resource Room," "with her numerical operations and calculations," and "with her listening skill." (A.R. at 208.)

On March 20, 2008, S.M.H.'s IEP was modified. (*Id.* at 217-29.) One weekly session of group counseling was added to her program. (*Id.* at 218.) The IEP stated that S.M.H. "sometimes says offensive things to classmates" and "has some difficulty complying with directions from teachers and can be defiant." (*Id.* at 220.)

On May 20, 2009, when S.M.H. was fifteen years old, her IEP was modified again. (*Id.* at 230-45.) She was removed from general education to a "special class with related services [and] counseling" because her "academic and management needs warrant[ed] a small class environment." (*Id.* at 230, 240.)

### f.   SSA Consultative Pediatrician J. Randall

On February 27, 2008, SSA consultative pediatrician J. Randall completed a Childhood Disability Evaluation of S.M.H. (*See* A.R. at 147-52.) Dr. Randall reported that S.M.H. had problems with concentration and completing assignments despite her placement in a special education classroom. (*Id.* at 152.)

7

### 3. The Decision of ALJ Artz

On February 24, 2009, ALJ Artz determined that S.M.H. was "not disabled" under the Act. (*Id.* at 9-20.) She made five findings in her opinion. (*Id.* at 12.) First, Artz found that S.M.H. "was an adolescent on the date the application was filed." (*Id.*) Second, she found that S.M.H. had "not engaged in substantial gainful activity at any time relevant to this decision." (*Id.*) Third, she found that S.M.H. had several "severe impairments," including a language-based learning disorder, attention deficit disorder, a mood disorder NOS, and a disruptive disorder NOS. (A.R. at 12.) Fourth, she found that S.M.H. "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926)." (*Id.*) Finally, Artz found that S.M.H. "does not have an impairment or combination of impairments that functionally equals the listings." (*Id.*)

Specifically, Artz found that S.M.H. had "marked limitation" in the domain of acquiring and using information. (*Id.* at 13-16). She found S.M.H. had "less than marked limitation" in the areas of attending and completing tasks and interacting and relating with others. (*Id.* at 16-18.) Finally, she found that S.M.H. had "no limitation in the domains of moving about and manipulating objects, caring for herself, or maintaining health and physical well-being. (*Id.* at 18-19.) Because S.M.H. did not have "marked" limitations in two or more of the functional domains, Artz concluded that S.M.H. was not disabled under the Act. (A.R. at 20.)

### C. Plaintiff's Request for Review by the Appeals Council

On March 18, 2009, Rivera requested review by the SSA Appeals Council. (*Id.* at 5.) On July 10, 2009, Rivera's counsel submitted additional evidence, which the Appeals Council made part of the record. (*Id.* at 4.) The evidence included: a school progress report from academic year 2008-2009 indicating that S.M.H. was "approaching standards" in reading, writing, and

8

math; a May 28, 2009 letter from Jenny Rawlings, Intensive Care Manager at Union Settlement Association stating that S.M.H. had a "mental health diagnosis of Mood Disorder Not Otherwise Specified and Disruptive Disorder Not Otherwise Specified," and exhibited "signs of a learning disorder"; medical and school records from Union Settlement Association from January 7, 2008, through June 1, 2009; and the New York Public Schools Disciplinary Action Information, dated February 11, 2009. (*See id.* at 119-29, 185-248.) The Appeals Council denied review on June 6, 2011, making the ALJ's decision the final determination of the Commissioner. (*Id.* at 1-4.)

## IV. DISCUSSION

### A.  Standard of Review

A reviewing court does not determine *de novo* whether a claimant is disabled. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir 1996) (citing *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)). Rather, the court's inquiry is limited to the question of whether the Commissioner applied the correct legal standard in making the determination and, if so, whether such evidence is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997) (citing *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). When a reviewing court concludes that the SSA applied the incorrect legal standard, the SSA's decision should be reversed. 42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair record or to explain his reasoning. *Crysler v. Astrue*, 563 F. Supp. 2d 418, 428 (N.D.N.Y. 2008) (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999)).

If the court determines that the correct legal standard has been applied, and the Commissioner's finding is supported by substantial evidence, the reviewing court shall deem the

Commissioner's findings of fact conclusive and affirm the decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted). Substantial evidence in this context is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]o determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the administrative record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (*per curiam*)). New evidence that is submitted to the Appeals Council becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision, provided the evidence is new and material and relates to the period before the ALJ's decision. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).

### B. Legal Standards for Determining Childhood Disability

Under the Act, every individual who is considered to have a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* at § 423(d)(1)(A). The disability must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The SSI program, codified under 42 U.S.C. § 1381c(a)(3)(C)(i), allows children under age eighteen to be considered medically disabled if the child has medically determinable

physical or mental impairments that result in marked and severe functional limitations that can last up to at least twelve months.

To determine whether an individual under the age of eighteen qualifies for SSI, the Commissioner must conduct a three-step inquiry: (1) determine whether the claimant is engaged in any substantial gainful activity; (2) determine whether the claimant has a "severe impairment" which significantly limits his ability to work; (3) if so, determine whether the impairment is one of the listings in the "Listing of Impairments" provided in 20 C.F.R. Part 404, Subpart P, Appendix 1, for which the Commissioner presumes disability. *See* 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. To determine whether an impairment or combination of impairments equals the listings, the Commissioner must consider the claimant's ability in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *See* 20 C.F.R. §§ 416.926(a)-(d). A medically determinable impairment functionally equals a listed impairment if it results in "marked" or "severe" limitation in two domains of functioning or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926(a). Limitations will be considered "marked" when the impairment "interferes seriously with the child's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926(a)(e)(2)(i).

## C.  Issues on Appeal

Rivera asks that the Court remand solely for calculation of benefits because "the administrative record persuasively demonstrates S.M.H.'s disability on two independent grounds." (Pl.'s Mot at 9.) First, Rivera argues that her daughter's cognitive defects meet the mental retardation listing. (*Id.*) Second, Rivera asserts that S.M.H. "functionally equals the Listings" because of her marked limitations in two domains: acquiring and using information,

and interacting and relating with others. (*Id.*) If the Court declines to find that S.M.H. is disabled, Rivera argues, in the alternative, that the Court should remand for further administrative proceedings. (*Id.*)

The Government urges the Court to remand the case to the Commissioner for further administrative findings for two reasons: (1) "[t]he ALJ's decision was based on an incomplete administrative record"; and (2) "the ALJ did not correctly apply the law and regulations in evaluating S.M.H.'s impairments." (Def.'s Mem. at 11, 14.) The Government argues that the case should not be remanded for calculation of benefits because the high standard has not been met. (*Id.* at 15.) Next, the Government insists that S.M.H. did not have a "marked limitation" in the domain of interacting and relating with others. (*Id.* at 18-19.) Finally, the Commissioner asserts that the scope of remand should not be limited so that "the ALJ may fully develop the record and consider all new and material evidence." (*Id.* at 19.)

The Court agrees with Rivera, and finds that the ALJ improperly found that S.M.H. was not disabled within the meaning of the Act.

### 1. The ALJ erred in her conclusion that S.M.H. did not have marked limitation in the domain of interacting and relating with others.

Because the ALJ found that S.M.H. had a "marked limitation" in the area of acquiring and using information," (A.R. at 13-16), S.M.H. would be entitled to benefits if the ALJ's finding that S.M.H. "had a less than marked limitation" in the domain of interacting and relating with others was unsupported by substantial evidence. *See* 20 C.F.R. § 416.924; *see also Miles ex rel. J.M. v. Astrue*, 775 F. Supp. 2d 715, 726 (S.D.N.Y. 2011).

In the domain of interacting and relating with others, the Commissioner considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and

respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). Generally, adolescents should have the ability to: initiate and develop friendships with children who are their age, and relate appropriately to other children and adults, both individually and in groups; begin to be able to solve conflicts with peers or family members or adults outside the family; recognize that there are different social rules for themselves and their friends and for acquaintances or adults; and intelligibly express their feelings, ask for assistance in getting their needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers). 20 C.F.R. § 416.926a(i)(2)(v).

In this domain, the ALJ made no specific findings; she merely stated: "Based on the evidence discussed above in the context of the domain of Acquiring and Using Information, the undersigned finds the claimant has a less than marked limitation in this domain." (A.R. at 17.) The Court must therefore review the ALJ's analysis of the evidence discussed in the context of acquiring and using information to assess whether there was substantial evidence to support the proposition that S.M.H. is not disabled. It is clear to the Court that the ALJ ignored substantial evidence of S.M.H.'s behavioral limitations in the domain of interacting and relating with others.

In her analysis of S.M.H.'s ability to acquire and use information, the ALJ considered the following: the testimony of Rivera and S.M.H. at the hearing; S.M.H.'s December 2006 IEP school evaluation and school psychologist report; Dr. Wiener's evaluation; the February 2009 letter from Wendy Kraus, as well as a May 2008 clinic note by Dr. Michael; Ms. Carmona's December 2007 letter; Jessica Levy's January 2008 letter; and the January 2009 parent conference form. (*Id.* at 13-16.)

13

The ALJ recounted that, in S.M.H.'s December 2006 IEP, her "Social/Emotional summary described her as friendly, cooperative and motivated to do well, with occasional impulsive behavior and difficulty with academic issues due to her lack of self-confidence and fear of making mistakes, although she often used her sense of humor as a coping mechanism." (*Id.* at 14.) She quoted Ms. Carmona's December 2007 letter, which indicated S.M.H. "had a history of inappropriate behaviors" and "generally had an 'I don't care' attitude when reprimanded for her behavior." (*Id.* at 16.) The ALJ summarized Dr. Wiener's 2008 findings that S.M.H. was "frequently disrespectful, argumentative" and "engage[ed] in behaviors such as fighting with and stealing from family members, although she engaged in a wide range of age-appropriate social and recreational activities." (*Id.* at 15.) She wrote that, according to a February 2009 letter, S.M.H. was "struggling with behavior and emotional issues including aggressive and oppositional behaviors at home and school, impulsivity, and poor judgment." (*Id.*) At the time of the 2009 hearing, S.M.H. "talk[ed] back to teachers and d[id] not follow school rules. She sometimes [wa]s angry and aggressive" and cut class "because she d[id] not understand the school work." (A.R. at 13-14.)

The Court additionally finds that the ALJ's observations regarding S.M.H.'s social behavior were inaccurate. Her statement that S.M.H. "has some other friends" is not supported by the evidence or testimony. (*Id.* at 14.) The ALJ asked if S.M.H. hung out with anyone; S.M.H. responded, "only one person." When the ALJ persisted and asked if S.M.H. had other friends, S.M.H. replied, "[s]ometimes but not really." (*Id.* at 37.) In Rivera's SSI application on behalf of her daughter, she wrote that S.M.H. "doesn't have any friends" and that she is "mainly a loner." (*Id.* at 98.) Dr. Wiener's report confirms this. (*See id.* at 142.)

Defendant urges the Court to focus on the evidence suggesting that S.M.H. related well to others, highlighting Dr. Capó's observation from 2006 that S.M.H. was "friendly, cooperative,

14

and motivated to do well in the test setting" and Dr. Wiener's note that S.M.H. was "cooperative and friendly upon evaluation." (Def.'s Mot. at 18-19.) Dr. Wiener's observations are contradicted by her Medical Source Statement, which provides that S.M.H. "is having difficulty interacting adequately with peers and adults. (A.R. at 142.) Regarding Dr. Capó's observation, the Court agrees with Rivera, who writes: "[t]he fact that S.M.H. was cooperative and friendly in a single test situation was negligible weight when measure against the day to day anti-social behaviors at home and in school." (Pl. Reply Mem. at 5.)

In short, there is little evidence in the record to support a determination that S.M.H. had "less than marked limitation" in interacting and relating with others. There is no evidence that she is able to "initiate and sustain emotional connections with others," *see* 20 C.F.R. § 416.926a(i), as demonstrated by the evidence that S.M.H. has only one friend and struggles at home with her family members. There is no evidence suggesting she was able to "develop and use the language of the community." 20 C.F.R. § 416.926a(i). While two consultative examiners who each met her once wrote that she was cooperative and friendly, almost every adult who interacted with S.M.H. on a regular basis described her as oppositional, immature, aggressive, and defiant. She did not seem to have the ability to "relate appropriately to other adults and children," *see* 20 C.F.R. § 416.926a(i)(2)(v), as memorialized in Rivera's testimony and various reports from her school. There is no evidence that she was developing the skills "to solve conflicts with peers or family members or adults" outside her family, nor that she recognized the "different social rules" for herself and her friends and for acquaintances or adults. *See id.* Nothing in the record indicates she was able to "intelligibly express her feelings," "seek information, described events, and tell stories, in all kinds of environments, and all types of people." *Id.*

Because there is substantial evidence in the record that demonstrates that S.M.H. has at least marked limitations in the domain of interacting and relating with others, she meets the marked limitations requirements of at least two functional domains as required by 20 C.F.R. § 416.926a and 42 U.S.C. § 1381c(a)(3)(C)(i). Accordingly, I recommend that Rivera's motion be **GRANTED**.

### D. The Commissioner's Remaining Arguments are Meritless.

The Court has considered the other arguments advanced by the Government and finds them to be without merit. First, based on the results of S.M.H.'s full scale IQ tests in 2008, her diagnosed impairments – she is Learning Disabled, and suffers from ADHD, a mood disorder, and disruptive disorder – and her significant limitations in social and academic skills, it is clear that she meets the mental retardation Listing under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05(D). Second, although it is true that the ALJ's decision was based on an incomplete record, (*see* Def.'s Mot. at 11-14), the Appeals Council properly augmented the record on July 10, 2009. (A.R. at 4.) Further, even if the ALJ had fully developed the record, as was required of her under 20 C.F.R. § 416.912(d), it is not clear that she would have properly analyzed the evidence, or that the evidence would have been relevant in her findings.[2] As the record stood, the ALJ had access to sufficient information to arrive at the conclusion that S.M.H. has marked limitations in at least two functional domains, yet she did not so find. Finally, remand for calculation of benefits is not inappropriate, even where the ALJ failed to develop the record. *See McFadden v. Barnhart*, No. 94 Civ. 8734 (RPP), 2003 WL 1483444, at *4 (S.D.N.Y. Mar. 21, 2003); *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 590-91 (S.D.N.Y. 2000).

---

[2] For example, Defendant argues that the ALJ should have "attempted to obtain records from Dr. Mohan" and question S.M.H. and Rivera "about S.M.H.'s asthma." (Def.'s Mot. at 12.) As Rivera correctly asserts, pediatric asthma records "have little or nothing to do with acquiring and using information" and there was no mention of S.M.H.'s asthma as the focus of her disability application during the hearing. (Pl.'s Reply at 8.)

### E. Remand for Calculation of Benefits is Appropriate.

Under 42 U.S.C. §405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. Remand for additional fact development may be appropriate if "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F. 3d 72, 82-3 (2d Cir. 1999). The two-pronged standard for a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the government's claim that the plaintiff is not disabled, *Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004).

Here, the ALJ came to the conclusion that S.M.H. did not meet the disability requirements under the Act and the children's SSI program. *See* 42 U.S.C. §§ 423(d)(2)(A), 1381c(a)(3)(C)(i). The record demonstrates S.M.H.'s disability, and remand in this case would not provide any substantial additional information. *See McFadden*, 2003 WL 1483444, at *9.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Rivera's motion be **GRANTED**, that Defendant's motion be **DENIED**, and that the case be remanded solely for the purpose of calculating benefits.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Colleen McMahon, 500 Pearl Street, Room 1640, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections in both the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1)(c) (2009); Fed. R. Civ. P. 72(a), 6(a), 6(d).

**DATED: February 13, 2014**
**New York, New York**

Respectfully Submitted,

*/s/ Ronald L. Ellis*

The Honorable Ronald L. Ellis
United States Magistrate Judge